Mohammad B. Shihabi (SBN 337819)
mshihabi@fordharrison.com
FORD HARRISON LLP
350 South Grand Avenue, Suite 2300
Los Angeles, CA 90071
Telephone: (213) 237-2400
Facsimile: (213) 237-2401

David R. Anderson (Texas Bar No. 24128388)
danderson@fordharrison.com
*[Pro Hac Vice Forthcoming]*
FORD HARRISON LLP
1601 Elm Street, Suite 4000
Dallas, TX 75201
Telephone: (214) 256-4700
Facsimile: (214) 256-4701

Jacob N. Koch (George Bar No. 437425)
jkoch@fordharrison.com
*[Pro Hac Vice Forthcoming]*
FORD HARRISON LLP
271 17th Street, NW, Suite 1900
Atlanta, GA 30363
Telephone: (404) 888-3955
Facsimile: (404) 888-3863

Attorneys for Plaintiffs
DOCTORS MEDICAL CENTER OF
MODESTO, INC. D/B/A DOCTORS
MEDICAL CENTER, DESERT REGIONAL
MEDICAL CENTER, INC. D/B/A DESERT
REGIONAL MEDICAL CENTER, SAN
RAMON REGIONAL MEDICAL CENTER,
LLC D/B/A SAN RAMON REGIONAL
MEDICAL CENTER, DOCTORS HOSPITAL
OF MANTECA, INC. D/B/A DOCTORS
HOSPITAL OF MANTECA, HDMC
HOLDINGS, L.L.C. D/B/A HI-DESERT
MEDICAL CENTER, and DOCTORS
MEDICAL CENTER OF MODESTO, INC.
D/B/A EMANUEL MEDICAL CENTER,

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOCTORS MEDICAL CENTER OF MODESTO, INC. D/B/A DOCTORS MEDICAL CENTER; DESERT REGIONAL MEDICAL CENTER, INC. D/B/A DESERT REGIONAL MEDICAL CENTER; | CASE NO. 2:25-at-1532 **COMPLAINT** |

SAN RAMON REGIONAL
MEDICAL CENTER, LLC D/B/A
SAN RAMON REGIONAL
MEDICAL CENTER; DOCTORS
HOSPITAL OF MANTECA, INC.
D/B/A DOCTORS HOSPITAL OF
MANTECA; HDMC HOLDINGS,
L.L.C. D/B/A HI-DESERT
MEDICAL CENTER; DOCTORS
MEDICAL CENTER OF
MODESTO, INC. D/B/A
EMANUEL MEDICAL CENTER,

        Plaintiffs,

        v.

CALIFORNIA NURSES
ASSOCIATION/NATIONAL
NURSES ORGANIZING
COMMITTEE,

        Defendant.

**DEMAND FOR JURY TRIAL**

COME NOW, Plaintiffs Doctors Medical Center of Modesto, Inc. d/b/a Doctors Medical Center, Desert Regional Medical Center, Inc. d/b/a Desert Regional Medical Center, San Ramon Reginal Medical Center, LLC d/b/a San Ramon Regional Medical Center, Doctors Hospital of Manteca, Inc. d/b/a Doctors Hospital of Manteca, HDMC Holdings, L.L.C. d/b/a Hi-Desert Medical Center, Doctors Medical Center of Modesto, Inc. d/b/a Emanuel Medical Center (collectively, the "Hospitals") who allege and complain against Defendant California Nurses Association/National Nurses Organizing Committee (the "Union"), and, in support of the relief sought herein, respectfully show the Court as follows:

## INTRODUCTION

1.    This is a suit for damages pursuant to the Labor Management Relations Act §301(a), 29 U.S.C. 185(a).

2.    This dispute arises from the Union's breach of multiple provisions of the parties' collective bargaining agreements ("CBAs") in conjunction with the parties' ongoing negotiation for a new collective bargaining agreement. Specifically,

FORD & HARRISON
LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT

the Union (1) failed to comply with its contractual obligations to engage in good-faith negotiation and mediation for a successor agreement and instead marched unwaveringly towards a pre-determined strike, and (2) called and sanctioned a strike, struck, and picketed, all in violation of the "no strike" provision of the parties' CBAs.

3.     From this misconduct, the Hospitals suffered harm for which the Union is liable–including fees and costs the Hospitals incurred to hire replacement workers for the unlawful strike and damages stemming from the Union's contractual violation of its duty to bargain in good faith.

4.     The Hospitals seek redress with this Court to recoup those damages, to direct the Union to bargain in good faith, and to avail themselves of all other available remedies at law or in equity to which they show themselves entitled.

## **PARTIES**

5.     The Hospitals are acute care hospitals located at the following addresses:

  a) Doctors Medical Center of Modesto ("DMC"), 1441 Florida Ave, Modesto, CA 95350;

  b) Desert Regional Medical Center ("DRMC"), 1150 N Indian Canyon Dr, Palm Springs, CA 92262;

  c) San Ramon Regional Medical Center ("SRRMC"), 6001 Norris Canyon Rd, San Ramon, CA 94583;

  d) Doctors Hospital of Manteca ("DHM"), 1205 E North St, Manteca, CA 95336;

  e) Hi-Desert Medical Center ("HDMC"), 6601 White Feather Rd, Joshua Tree, CA 92252; and

f)  Emanuel Medical Center ("EMC"), 825 Delbon Ave, Turlock, CA 95382.

6.    At all times material, the Hospitals engaged in the business of providing acute care, health care services, and operations in California.

7.    The Hospitals may be served with service of process through their undersigned counsel.

8.    The Union is, and at all times relevant to this matter was, the National Labor Relations Board certified exclusive bargaining agent with respect to rates of pay, wages, hours of work, and other terms and conditions of employment for bargaining units comprised of nurses at each of the six hospitals identified in Paragraph 5 of this Complaint.

9.    Upon information and belief, the Union may be served with process at its principal place of business through any lawful means, and through its Registered Agent for Service of Process, Donald Nielsen, at 155 Grand Avenue, Suite 100 Oakland, CA 94612.

## JURISDICTION AND VENUE

10.    The Court possesses subject matter jurisdiction pursuant to 28 U.S. Code §1331 and Section 301 of the Labor Management Relations Act ("LMRA"); 29 U.S. Code §185.

11.    Venue is appropriate in this District because the Union's officers or agents are engaged in representing or acting for employee members within the geographical boundaries of this District. 29 U.S. Code § 185 (a); (c).

## FACTS AND CLAIMS FOR RELIEF

### The Collective Bargaining Agreement

12.    The Hospitals and the Union are parties to a Master CBA.

13.    Relevant to this dispute are the following provisions from the Master CBA:

Ford & Harrison LLP
Attorneys At Law
Los Angeles

COMPLAINT

# ARTICLE 24 – WORK STOPPAGE

## A.    Prohibited Activity

During the term of this Agreement, neither the Association nor its agents or representatives, nor any Registered Nurses, individually or collectively, shall call, sanction or participate in any strike, work stoppage, boycott, sit-down, sickout or slow-down, or any refusal to cross a picket line at or enter the Facility's premises, or any other interference with any of the Facility's services or operations, or with the movement or transportation of goods to or from the Facility's premises.

The parties agree that no picketing shall take place at any Tenet facility covered by this Agreement, except upon ten (10) days' prior written notice to Tenet's Senior Director of Labor Relations or his/her designee.

## B.    Waiver By Association

The prohibitions of this Article are intended to apply regardless of the motivation for the strike or other conduct.  By way of illustration only, this Article expressly prohibits (1) sympathy strikes (individual or concerted failure to cross a picket line established by another labor organization or by members of another bargaining unit); (2) strikes over disputes that are not subject to arbitration; and (3) strikes in protest of alleged violations of state or federal law.  Any statutory right under the NLRA which a Registered Nurse may otherwise have to engage in such conduct is hereby expressly waived by the Association.

## C.    Association Obligation

If a violation of this Article should occur, the Association shall immediately do everything within its power to terminate the violation.

*                    *                    *

## E.    Association Officials

The Association's Labor Representatives and Nurse Representatives shall attempt to end any violation of this article by personally complying with the article, and by urging others to do so.  Should they fail to do so, they may be selectively disciplined, including discharge, provided they shall have recourse to the grievance and arbitration procedure as to the question of whether they complied with this section.

*                    *                    *

Ford & Harrison
LLP
Attorneys At Law
Los Angeles

- 5 -

COMPLAINT

## ARTICLE 25 – NOTICES

Notices by the Association to the Facility shall be mailed, by certified mail, return receipt requested, or delivered to the most senior Human Resource person at each facility. Copies shall also be mailed, by certified mail, return receipt requested, or delivered to the Chief Nursing Officer and Chief Executive Officer at the facility.

Notices by the Facility to the Association shall be mailed, by certified mail, return receipt requested, or delivered to the following address:

155 Grand Avenue
Oakland, CA 94612

\*          \*          \*

## ARTICLE 28 – SUCCESSOR AGREEMENT

A.    The parties will commence negotiations for a successor collective bargaining agreement no later than six (6) months prior to the expiration of this Agreement. A mediator with health care experience shall be selected during this negotiation period. After three months of bargaining, and at either party's invocation, the bargaining process may proceed immediately to the mediation process described below:

1.    Upon invoking mediation for the remaining open issues, each party shall declare unresolved issues, issue by issue, with respect to the matters that are in dispute.

2.    A letter outlining all "open issues" must be sent via email and U.S. mail within fifteen (15) days of invoking the mediation process. Such email/letter must include the last proposal of each party on each disputed issue and be sent to the mediator and the other party.

3.    Once both parties forward an "open issues" communication to the other, a sixty (60) day mediation period will commence. During such sixty (60) day period the parties shall utilize the mutually agreed upon mediator in a good faith effort to resolve all outstanding issues.

4.    In the event there remain any outstanding issues at the end of the sixty (60) day mediation period, the mediator shall make a recommendation on all open issues. If both parties agree to the "mediator's recommendation" issue by issue agreement shall be deemed reached on said issues.

5.    Upon completion of the mediation process, the parties shall continue to bargain in good faith in an effort to resolve outstanding issues on their own.

6.    The cost of the mediation will be split evenly between the parties. The parties may mutually agree at any time to amend, alter or modify the contract resolution procedures described herein, so

long as any amendments, alterations or modifications are reduced to writing and signed by authorized representatives of both parties.

\*            \*            \*

C.    If the process above continues beyond the expiration date of this Agreement, this Agreement shall remain in full force and effect, including the Work Stoppage Article contained herein, except upon thirty (30) days' notice by either party terminating this Agreement.

14.    Each Hospital also entered into local collective bargaining agreements ("Local CBAs") with the Union.

## Successor Agreement Negotiations

15.    On December 26, 2024, the Union commenced negotiations by identifying the Hospitals of its intent to bargain a successor agreement pursuant to Article 28 of the CBAs.

16.    The parties met for successor agreement negotiations on February 19 and 20, 2025 and met for additional bargaining sessions twice per month from March through September.

17.    On May 22, 2025, the Hospitals' negotiation team received a document from the Union as part of its bargaining proposals titled, "California Tenet Bargaining Timeline 2024" (hereinafter, "the Strike Timeline").

18.    Upon information and belief, the Strike Timeline was created by the Union, its members and/or agents as early as November 2024.

19.    The Strike Timeline set forth the Union's predetermined intention to call, sanction and participate in a work stoppage/strike in August 2025.

20.    Upon information and belief, the Union intended from the beginning to strike at the Hospitals regardless of what occurred during negotiations, thereby violating and/or repudiating Article 28 of the parties' CBAs which required I to bargain and mediate in good faith.

## The Union's First Improper Attempt to Terminate the CBA

21.    Pursuant to Article 28, paragraph (C), the CBAs remained "in full force

and effect, including the Work Stoppage Article…" (contained in Article 24) unless and until either party gave proper notice of its intent to terminate the CBAs.

22.    Article 25 of the Local CBA between DRMC and the Union provides as follows:

> Notices by the Association to the Facility shall be mailed, by certified mail, return receipt requested, or delivered to the following address:
>
>> Director of Human Resources
>> Desert Regional Medical Center
>> 1150 North Indian Dr.
>> Palm Springs, California 92262
>
> Copies shall also be mailed, by certified mail, return receipt requested, or delivered to the Chief Nursing Officer and Chief Executive Officer at the facility.

23.    Article 25 of the Local CBA between DMC and the Union provides as follows:

> Notices by the Association to the Facility shall be mailed, by certified mail, return receipt requested, or delivered to the following address:
>
>> Chief Human Resources Officer
>>
>> Doctor's Medical Center of Modesto
>>
>> 1441 Florida Ave.
>>
>> Modesto, California 95350
>
> Copies shall also be mailed, by certified mail, return receipt requested, or delivered to the Chief Nursing Officer and Chief Executive Officer at the address listed above.

24.    Article 25 of the Local CBA HDMC and the Union provides as follows:

> Notice by the Association to the Facility shall be mailed, by certified mail, return receipt requested, or delivered to the most senior Human Resources person at each facility. Copies shall also be mailed, by

certified mail, return receipt requested, or delivered to the Chief Nursing

Officer and Chief Executive Officer at the facility.


25.    Article 25 of the Local CBA SRRMC and the Union provides as follows:

Notices by the Association to the Facility shall be mailed, by certified

mail, return receipt requested, or delivered to the following address:

Director of Human Resources

San Ramon Regional Medical Center

6001 Norris Canyon Rd

San Ramon, California 94583


Copies shall also be mailed, by certified mail, return receipt requested,

or delivered to the Chief Nursing Officer and Chief Executive Officer

at the facility.


26.    Article 25 of the Local CBA between DHM and the Union provides as follows:

Notices by the Association to the Hospital shall be mailed, by certified

mail, return receipt requested, or delivered to the most senior Human

Resource person responsible for the Hospital.


Doctors Hospital of Manteca

1205 E North St

Manteca, CA 95336


Copies shall also be mailed, by certified mail, return receipt requested,

or delivered to the Chief Nursing Officer and Chief Executive Officer

FORD & HARRISON
LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT

1    at the Hospital.

2

3    27.    Article 25 of the Local CBA between EMC and the Union provides as

4    follows:

5

6    Notices by the Association to the Facility shall be mailed, by certified
     mail, return receipt requested, or delivered to the following address:

7    Chief Human Resources Officer, Or His/Her Designee
8    Emanuel Medical Center
     825 Delbon Avenue
9    Turlock, California 95382

10   Copies shall also be mailed, by certified mail, return receipt requested,
     or delivered to the Chief Nursing Officer and Chief Executive Officer
11   at the address listed above.

12   28.    On August 28, 2025, the Union emailed Cathy Myrick (Director, Labor

13   Relations), purporting to terminate the CBAs of each of the Hospitals, effective

14   September 28, 2025.

15   **The Union Unlawfully Calls and Sanctions a Strike in Violation of the CBA**

16   29.    One week after emailing its deficient August 28, 2025 termination

17   notice, on September 5, 2025, the Hospitals discovered flyers from the Union calling

18   on bargaining unit members to vote (on September 11 and 12, 2025) to engage in a

19   work stoppage/strike.

20   30.    On September 11 and 12, 2025, the Union conducted strike votes for

21   each of the Hospitals.

22   31.    The CBAs prohibit the Union, its agents, or any of the bargaining unit

23   representatives, individually or collectively, to call, sanction or participate in a work

24   stoppage/strike for any reason regardless of the underlying motivation for supporting

25   the strike or other prohibited conduct.

26   32.    The Union published these flyers and conducted its strike votes while

27   the CBAs were in effect in express violation of Article 24's prohibition on "calling"

28   or "sanctioning" or "participating" in a work stoppage/strike. This misconduct also

FORD & HARRISON
LLP
ATTORNEYS AT LAW
LOS ANGELES

- 10 -

COMPLAINT

violated Article 28, and the Union's contractual obligation to continue the bargaining process in good faith.

33.    Upon information and belief, the Union also sent communications to bargaining unit members regarding the Union's attempt to convince members to authorize a strike the Union had pre-planned, as outlined in the Strike Timeline.

34.    This action, too, violated Article 24 and Article 28 of the CBAs.

35.    Thereafter, on September 18 and 19, 2025, the Union informed each of the Hospitals it intended to strike from September 30, 2025 at 7:00 AM through October 1, 2025 at 7:00 AM.

36.    In doing so, the Union violated Article 24 of the CBAs.

37.    After receiving the Union's notice of its intent to strike, the Hospitals promptly notified the Union on September 20, 2025, that it had violated the CBAs by calling and sanctioning a strike and interfering with the Hospitals' operations during the term of the CBAs and reminded the Union that pursuant to Article 24, the Union was required to "immediately do everything within its power to terminate the violation" and that the Union's Labor Representative and Nurse Representatives were required to "attempt to end any violation of [Article 24] by personally complying with the article, and by urging others to do so."

38.    The Hospitals also informed the Union that they were in receipt of the Union's August 28, 2025 email purporting to terminate the CBA, and that the same failed to comply with the CBAs, rendering it void, and of no effect.

39.    In response, the Union withdrew its strike notices and called off the work stoppage/strike.

## The Parties Initiate/Begin the Mediation Process

40.    On September 21, 2025, the Hospitals invoked the mediation process contained in Article 28 paragraph (A) of the CBAs to assist the parties with negotiations.

41.    The Hospitals complied with Article 28's mediation process by,

including and not limited to:

> ➢ declaring unresolved issues (issue by issue) with respect to matters in dispute and

> ➢ transmitting a letter of all "open issues" within 15 days of invoking mediation – including the last proposal of each party on each disputed issue to both the mediator and the Union.

42.    On or about October 3, 2025, the Union violated Article 28 by transmitting to the meditator a letter that omitted the Hospitals' proposals, contained brand new proposals, and included a Union proposal that had already been tentatively agreed to in a prior session.

**The Union Purports to Terminate the CBA a Second Time**

43.    On September 22, 2025, the Union again purported to terminate the CBAs effective October 22, 2025.

44.    None of the Hospitals received the notice in accordance with Article 25, 30 days prior to the purported termination date of October 22, 2025, rendering the Union's purported termination notices dated September 22, 2025 invalid and of no effect.

45.    The Union's misconduct in this regard violated the plain and express requirement of Article 28 that the parties (1) engage in mediation once invoked by a party; (2) that once mediation is invoked, attempt in a good faith effort to resolve all outstanding issues between the parties; and (3) that even if mediation is unsuccessful, to continue to bargain in good faith.

46.    The Union's actions as described above constitute a breach of its obligation to bargain and mediate in good faith as required by the CBAs.

47.    That is particularly true as the Union had planned, even before negotiations began, that a strike would be called in late summer/early fall as

contemplated by the Strike Timeline.

**The Union Again Unlawfully Calls and Sanctions a Strike in Violation of the CBA**

48.    At 3:00 pm on October 20, 2025, the Union notified DHM representative Dianna Romo of its intent to strike and picket from October 30, 2025 at 7:00 AM through October 31, 2025 at 6:59 AM.

49.    At 4:08 pm on October 20, 2025, the Union emailed and notified DMC representative Michele Bava of its intent to strike and picket from October 30, 2025 at 7:00 AM through October 31, 2025 at 6:59 AM.

50.    At 4:12 pm on October 20, 2025, the Union notified HDMC representative Laurie Rush of its intent to strike and picket from October 30, 2025 at 7:00 AM through October 31, 2025 at 6:59 AM.

51.    At 4:12 pm on October 20, 2025, the Union notified DRMC representative Christopher Martin of its intent to strike and picket from October 30, 2025 at 7:00 AM through October 31, 2025 at 6:59 AM.

52.    At 4:22 pm on October 20, 2025, the Union notified EMC via Michele Bava of its intent to strike and picket from October 30, 2025 at 7:00 AM through October 31, 2025 at 6:59 AM.

53.    At 4:39 pm on October 20, 2025, the Union notified SRRMC representative Jane Roberts-Macart of its intent to strike and picket from October 30, 2025 at 7:00 AM through October 31, 2025 at 6:59 AM.

54.    The parties were scheduled to participate in mediation with a mediator from the Federal Mediation and Conciliation Service on October 22 and 23, 2025.

55.    The Union's act of calling and sanctioning a work stoppage/strike while the CBAs were in effect violated the terms of the CBAs.

56.    The Union's act of calling and sanctioning a work stoppage/strike immediately before participating in the first date of schedule mediation demonstrates bad faith in violation of the terms of the CBAs.

57.    Later that day, the Hospitals promptly notified the Union that they were in receipt of the work stoppage/strike notices and informed the Union that it was in violation of the CBAs.

58.    The Hospitals, again, reminded the Union that pursuant to Article 24 of the CBAs, the Union was required to "immediately do everything within its power to terminate the violation" and that the Union's Labor Representative and Nurse Representatives were required to "attempt to end any violation of [Article 24] by personally complying with the article, and by urging others to do so."

59.    And the Hospitals, again, informed the Union that they received the Union's September 22 letter purporting to "terminate" the CBAs and that the notice provided by the Union failed to comply with the CBAs, rendering the notices void and of no effect.

60.    In response, the Union claimed the September 22 termination letter was proper and notified the Hospitals it considered the CBAs terminated effective October 22, 2025.

61.    The next day, October 21, 2025, as a final courtesy to the Union, the Hospitals reminded the Union of its obligations under the CBAs and encouraged it to comply.

62.    Beginning on October 30, 2025 at 7:00 am Pacific Time, the Union struck and picketed SRRMC, DHM, DMC, DRMC, EMC and HDMC.

63.    In doing so, it violated Articled 24 by striking while the CBAs were in effect and picketing without providing at least 10 days' notice.

64.    On information and belief, the Union knowingly and deliberately violated the CBAs in order to strike on October 30, 2025 in an effort to increase pressure on the Hospitals by having the strikes coincide with a strike the Union called at University of Southern California Keck Hospital and Norris Cancer Center for the same day, hoping to diminish the Hospitals' ability to hire replacement workers.

FORD & HARRISON
LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT

**The Hospitals' Damages**

65.    From the conduct described above, the Hospitals understood the Union would not comply with its obligations under the CBAs and, therefore, took steps to organize replacement workers to maintain operations during the anticipated strike and provide health services to those members of the public who needed them during the work stoppage/strike.

66.    As a result of the work stoppage/strike, the Hospitals incurred substantial damages to bring in replacement workers–including compensation, accommodations, travel and related fees for the replacement workers it secured.

67.    The Hospitals have also been damaged in the form of bargaining costs incurred due to the Union's violation of its contractual obligation to bargain in good faith from the outset of the successor agreement bargaining process that commenced once the Hospitals received the Union's demand to bargain in December 2024.

**COUNT I**

68.    The Hospitals re-allege and incorporate paragraphs 1-67 of this Complaint as if fully set forth herein.

69.    CNA and the Hospitals entered into CBAs, valid and binding collective bargaining agreements subject to enforcement by this Court pursuant to LMRA Section 301.

70.    By the conduct alleged above, the Union breached Article 24 of the CBAs in November 2024 by calling and/or sanctioning a strike to commence in August 2025 regardless of what occurred at the bargaining table as outlined in the Strike Timeline.

71.    The Hospitals have been damaged as a result of this unlawful conduct and should be awarded damages in an amount to be determined by the trier of fact.

**COUNT II**

72.    The Hospitals re-allege and incorporate paragraphs 1-71 of this Complaint as if fully set forth herein.

FORD & HARRISON LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT

73.    By the conduct alleged above, the Union breached Article 24 of the CBAs on or around September 5, 2025 by distributing flyers and other communications calling bargaining unit members to vote on participating in a work stoppage/strike, and conducting a strike vote on September 11 and 12–thereby sanctioning the same–while the CBAs were in effect.

74.    The Hospitals have been damaged as a result of this unlawful conduct and should be awarded damages in an amount to be determined by the trier of fact.

## COUNT III

75.    The Hospitals re-allege and incorporate paragraphs 1-74 of this Complaint as if fully set forth herein.

76.    By the conduct alleged above, the Union breached Article 24 of the CBAs on September 18 and 19, 2025 by calling and/or sanctioning a work stoppage/strike at the Hospitals while the CBAs were still in effect.

77.    The Hospitals have been damaged as a result of this unlawful conduct and should be awarded damages in an amount to be determined by the trier of fact.

## COUNT IV

78.    The Hospitals re-allege and incorporate paragraphs 1-77 of this Complaint as if fully set forth herein.

79.    By the conduct alleged above, the Union breached Article 24 of the CBAs on October 20, 2025 by calling and/or sanctioning a work stoppage/strike at the Hospitals while the CBAs were still in effect.

80.    The Hospitals have been damaged as a result of this unlawful conduct and should be awarded damages in an amount to be determined by the trier of fact.

## COUNT V

81.    The Hospitals re-allege and incorporate paragraphs 1-80 of this Complaint as if fully set forth herein.

82.    By the conduct alleged above, the Union breached Article 24 of the CBAs by engaging in picketing on October 30, 2025 at each Hospital without 10

1 days' notice.

2    83.    The Hospitals have been damaged as a result of this unlawful conduct
3 and should be awarded damages in an amount to be determined by the trier of fact.

4                                    **COUNT VI**

5    84.    The Hospitals re-allege and incorporate paragraphs 1-83 of this
6 Complaint as if fully set forth herein.

7    85.    By the conduct alleged above, the Union breached Article 24 of the
8 CBAs on October 30, 2025, by calling, sanctioning, and participating in a work
9 stoppage/strike at the Hospitals while the CBAs were still in effect.

10    86.    By the conduct alleged above, the Union also violated Article 24 of the
11 CBAs by failing to immediately do everything within its power to terminate the
12 violation and urge others to comply with the CBAs after having been notified by the
13 Hospitals on two separate occasions (October 20 and 21, 2025) to comply with the
14 terms of the CBAs.

15    87.    By the conduct alleged above, the Union also violated and/or repudiated
16 Article 28 of the CBA by refusing to engage in contractually required good faith
17 bargaining and mediation with the Hospitals, which the Union had planned as early
18 as November 2024.

19    88.    The Hospitals have been damaged as a result of this unlawful conduct
20 and should be awarded damages in an amount to be determined by the trier of fact.

21                                    **COUNT VII**

22    89.    The Hospitals re-allege and incorporate paragraphs 1-88 of this
23 Complaint as if fully set forth herein.

24    90.    By the conduct alleged above, the Union violated Article 28 of the
25 CBAs by failing to engage in contractually required good faith bargaining and
26 mediation with the Hospitals.

27    91.    The Hospitals have been damaged as a result of this unlawful conduct
28 and should be awarded damages sustained in an amount to be determined by the trier

FORD & HARRISON
LLP
ATTORNEYS AT LAW
LOS ANGELES

- 17 -

of fact as well as the specific performance of engaging in good faith bargaining and mediation.

92.     The Court should order the Union to specifically engage in contractually compliant good faith bargaining and mediation as outlined in Article 28 of the CBAs.

**COUNT VIII**

93.     The Hospitals re-allege and incorporate paragraphs 1-92 of this Complaint as if fully set forth herein.

94.     By the conduct alleged above, the Union violated Article 28 of the CBAs by failing to utilize a mediator "in a good faith effort to resolve all outstanding issues" and by failing to exhaust the mediation process rendering any termination notice void and of no effect.

95.     The Hospitals have been damaged as a result of this unlawful conduct and should be awarded damages sustained in an amount to be determined by the trier of fact as well as the specific performance of engaging in good faith bargaining and mediation.

96.     The Court should order the Union to specifically engage in contractually compliant good faith bargaining and mediation as outlined in Article 28 of the CBAs.

**COUNT IX**

97.     The Hospitals re-allege and incorporate paragraphs 1-96 of this Complaint as if fully set forth herein.

98.     By the conduct alleged above, the Union violated Article 24 of the CBAs by failing to attempt to end any violation of Article 24 by failing to ensure the Union's Labor Representatives and Nurse Representatives personally complied with Article 24 and by failing to urge others to do so.

99.     The Hospitals have been damaged as a result of this unlawful conduct and should be awarded damages sustained in an amount to be determined by the trier of fact.

## **PRAYER FOR RELIEF**

WHEREFORE, the Hospitals pray that pursuant Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, as amended that this Honorable Court issues judgment as follows:

1. A declaration that the Union has violated the terms of the CBAs by the conduct described herein;

2. For damages according to proof;

3. For the Union to specifically perform in compliance with Article 28 of the CBAs;

4. For costs and attorneys' fees of suit incurred;

5. For such other and further relief at law or in equity as the Court may deem appropriate and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a jury trial for all causes of action.

Dated:  November 7, 2025                Respectfully submitted,
                                        FORD HARRISON LLP


                                        By: */s/ Mohammad B. Shihabi*
                                        MOHAMMAD B. SHIHABI
                                        DAVID ROGER ANDERSON
                                        JACOB N. KOCH
                                        Attorneys for Plaintiffs
                                        DOCTORS MEDICAL CENTER,
                                        DESERT REGIONAL MEDICAL
                                        CENTER, SAN RAMON REGIONAL
                                        MEDICAL CENTER, DOCTORS
                                        HOSPITAL OF MANTECA, HI-
                                        DESERT MEDICAL CENTER, and
                                        EMANUEL MEDICAL CENTER

FORD & HARRISON
LLP
ATTORNEYS AT LAW
LOS ANGELES

- 19 -

COMPLAINT